And we move to the final case this morning, which is U.S. v. Kohler. May it please the court, there is really one issue before this court, it's rather straightforward. Whether or not the district court extended Angela Kolp's sentence so that she could get treatment in BOP, which is in violation of TAPIA. The analysis is straightforward. You look first at the words used. Here the sentencing transcript is replete with mentions, with references to the fact that the judge wants her to get treatment in prison. And that a sentence of the guidelines, now granted I was asking for four months, but a sentence within the guidelines was too short to ensure that she would get adequate treatment. This sentence was very much driven, and the judge's comments were driven by the fact that he wanted her to get the treatment that he hoped that she would get after everything else had failed within BOP. That's something TAPIA does not allow. So she wouldn't have to pay for it. Well, she's indigent, so she wouldn't pay for it anyways. Well, we've got cases where regardless of indigency, but go ahead, that's another thing. It has to be pending, actually, right now, whether or not you can order an indigent defendant to receive, to pay for counseling. Oh, interesting issue. What revocation term did the guidelines recommend? Four to ten months. And so the sentence was actually double the top end of the guidelines. It was the maximum of what was left, right? No, I believe 24 months was left? Yes, Your Honor. Okay. So though a 24-month sentence would be available, he doubled the guideline, doubled the top end of the guidelines in imposing the sentence. And looking at what this Court did in Cubiesco and in most of the other cases that we cite in the brief, Dean, out of the Sixth Circuit, and TAPIA, it's all going a little bit higher, and in this case, much higher than what the guidelines call for. And what's driving that? Well, it's being driven here not by really the behavior that calls for a punishment, but the district court's hope that she'll get treatment within the BOP. Well, but she violated each time that she came out, right? Yes, Your Honor. She violated. She was very familiar to myself and to the prosecutor and to the court. She had been there probably four times. And each time, just like any addict, she would show promise and then relapse, promise, relapse, promise, relapse. And that's what the district court's getting at is we've tried every option of treatment. Now you have to try, and I think he calls it inpatient, but then says treatment behind bars. And that really is what TAPIA says you can't do. As laudable as it may be, it's something that the district court may not do. And that's extend the sentence so that she'll get that within BOP. Something that the district court can't control and to this time that Ms. Culp isn't receiving. The final thing in this analysis is really whether or not those comments are sufficient. Now, of course, a common sense looking says it's very clear that he's driving at this. Pages 12, 13, 14, and 20, he's making these comments very clear. But also they match up to what was found to be a violation in both TAPIA, Henderson, and Cubiesco. It's almost indistinguishable. And, in fact, here we have more comments than there. But I'm not privy to the sentencing transcripts in all those cases. But what the court cited there mirrors with what happened here. Thus, we just ask that this court reverse and remand this case for a new sentencing unless the court has any questions about the standard review issue or whether or not TAPIA would apply to supervise. What about the issue of the contemporaneous objection once the court does hand down the sentence? Yes, Your Honor. I think this court has made clear in the Cunningham-type issues. This court's tired of them. It's very tired of the Cunningham issue of, hey, you didn't address everything I wanted. This is a little bit distinct. This would fall within the national origin, the gender, whatever other aspect is prohibited by 3553A. You make your pitch to the judge, and the judge says, you know, no. I'm going to go with 20 months. And he gives a statement of reasons. And in that statement of reasons, I don't have to take exception, but my statement, I'm not waiving that objection because I don't. And it's also very difficult at that moment until you have the transcript, until you know everything. You're in the heat of that moment. So I don't believe this court should apply the Cunningham-type waivers to what would happen with the Tapia violation. And I'd note also that no contemporaneous objection is made in Tapia, nor is it made in Henderson, nor is it made in, I believe, the Flores-Figueroa case, the national origin case that we cite to, or Patrick. So I don't believe that there's a need to make the contemporaneous objection. And I believe Bartlett controls, or it says Rule 51 doesn't demand that a defense attorney take exception. But I know that this court has said in Cunningham-type issues, we have to. I don't think it should then spill over to these issues. Unless there's any other questions. Thank you, Your Honor. Good morning, Your Honor. Counsel. May it please the Court, my name is Mario Gonzalez. I'm representing the United States in this matter. I was both trial and appellate counsel in this case. This case of Angela Culp, the prosecution of Angela Culp, is permeated from beginning to end with the addiction problems of Angela Culp. And unlike the typical case, this is a case where the underlying prosecution was for drug distribution. She was living with a drug dealer, and she was distributing drugs to feed her habit. During one of the transactions, as noted in the facts, she uses some of the drugs that she sells. So she's been an addict from the beginning. But in this case, the court did not conduct or commit a tapia-type violation because it addressed a lot of the conversation about drug treatment and rehabilitation was brought upon by the parties. The supervising probation agent, Mr. Bugney, myself, when we raised the issues of the fact that we were there for not the first time, not the second time, but the third revocation hearing. And each of those revocation hearings were precipitated by continued drug use by Ms. Culp, missed drug treatments, and an escalation in her drug addiction. She started off with cocaine. Throughout the violations include now the most recent violations were heroin, cocaine, and marijuana. So a lot of the court's comments were addressing some of the concerns raised by the parties as to her continued drug use. But when one looks at this in the entire context of the revocation hearing and the court sentencing, the court makes it pretty clear throughout that its primary concern is increased punishment and punishment in this case. It talks about when one looks at the latter part of the sentencing transcript, when the court begins to hand down its sentence, it indicates there are many reasons why the court is doing what it's doing. First and foremost is the defendant's failure to comply with the court's restrictions on the use of drugs. Not her inability, but the failure in that the court had spent a lot of money on rehab to no avail. And also addressing what the supervising probation agent indicated was the defendant's poor attitude. And the court in its remarks, the second issue that it addresses is the defendant's poor attitude. The defendant's stance, the term or the phrase, pardon the usage of it. That discussion, or the problem I have with sort of hanging our hat on that discussion is that it's in response to the argument or to the issue of whether further supervision is appropriate. And the judge is saying all those things in concluding that no further supervision is appropriate here. It's got to be an incarceration sentence. But what we're focusing on here is the length of the incarceration or the re-imprisonment here on revocation. And the imposition of a 20-month term based largely, if not exclusively, on the judge's reflections on the defendant's need for treatment. As opposed to punishment, protection of the public, other justifications that are permitted for an increased term of imprisonment. It does seem like everything is focused on rejecting the short duration of imprisonment because it's not going to be long enough for her to get treated. But every time the court makes a comment, I know that Mr. Bugney quoted from the transcript where the court talks about how much time would be needed for the defendant to receive the treatment that she needs. In the very next sentence, the court comes back to, we have been repeatedly here to address treatment and to no avail. So I don't, I think- Outpatient treatment. Outpatient treatment. He sees the prison term as a way of providing inpatient treatment. And there's actually some references to that terminology. He does mention inpatient treatment, but that goes hand in hand. And when he makes that comment, he says the main issue, the main reason why we're here is for punishment. We gave her 60 days and a year of supervised release unless it would be reduced to 30 days for drug treatment were available. She was placed in inpatient drug treatment previously. She was initially given a six-month sentence. I don't know which sentence that was. Six-month sentence. She was given 60 days. That was reduced to 30 days. If she could be placed in drug treatment, she was placed in drug treatment. We gave her, again, short drug treatment. She was given every, I think the record is pretty clear, she was given every opportunity to obtain treatment. And I think when one looks at the court, the court does make some comments that are a bit troubling. But most of those are in response to issues that are raised by the parties. But I think at the end, when the court is issuing its sentence, it's pretty clear that he wants punishment to be the presiding issue. He wants, he indicates in his final sentencing remarks that escalated punishment is needed to send a message that the shorter periods did not work. They had no impact. The court comments on the fact that it could have given her 24 months. But she's made some last-minute attempts and that 20 months would bring home the point that the defendant needs to put more effort into complying with abiding by the law. And I think that the last statements from the court, I really, I think, address the court's intent. When the court admits that the sentence is harsh and that the reason the sentence, the 20-month sentence is being handed down for punishment purposes and that the sentence is harsh is for the defendant to reflect on everything that she's done as a form of punishment. Because if she doesn't reflect on that, the results are going to be tragic. And in this case, the increased incarceration is not being added for the sole purpose or even the additional purpose of seeking treatment because the court has seen she's been given every type of treatment possible and she's failed it. So based upon the court's final comments, I believe that there is not a TAPIA violation and I would ask the court to affirm the conviction. Thank you, Your Honors. I would just note that probably the most troubling comment and the one that speaks to the fact that the judge does look at this as inpatient comes within the context of what Mr. Gonzales is addressing. And that's page 20 where the court says, And yet the things the court has done have not had a significant impact on you. Therefore, the last option is increased incarceration and an opportunity for you to engage an inpatient. Or I should say, programming behind bars. It's very clear that there are many factors that go into any sentencing. Anybody who's been at one knows that there's many factors every judge has to weigh. But here, the driving factor, however, was the fact that the court wanted her to get more treatment. And that's why a guideline sentence wasn't appropriate and one of 20 months was. Well, TAPIA error is really hard, especially in the context of a case like this. And it's almost a kind of an invited error when everybody's focused on the defendant as addict instead of the defendant as criminal. And so the judge is going with that interpretation of what's going on in the defendant's life and expressing a great deal of compassion. And the goal of rehabilitation and treatment to get the defendant clean as opposed to the more punitive and public protection aspects of the sentencing decision. So it's almost a form of invited error. Why shouldn't we just construe it that way since that's what everybody was arguing in the court? I don't think invited error would save it from being an error. I mean, I know you didn't ask for 20 months. You asked for four months. I mean, everybody was arguing about her need for treatment. And that's what her real problem is. The only way she can kick this habit is if she gets treatment. Clearly. And, look, if there were many comments within the sentencing transcript that go to addiction, I'm not focused on those. I'm not trying to say, you know, that's what we're all here for. But clearly that's what everybody was arguing about. That was every violation was about her drug use. But if she weren't indigent, we wouldn't have this issue, would we? I don't know. I mean, I have plenty of cases. There's a disparity right there. If she's not indigent, we wouldn't even be talking. We wouldn't have an issue to appeal. Possibly. I've never actually represented somebody who's not indigent. Well, yeah. You're the wrong one to ask about that. But I would address it that everybody there is discussing this. But it's really what are you going to do when you're escalating the sentence. Clearly it has to be a factor. But not just the fact that, you know, you're an addict and we want you to get clean, or we're an addict and we need to drive home the point. But it's that you want that treatment. I'm going to extend it farther than maybe what normally would be done so that you get this treatment. And that's where the extension, that's where the double the top end of the guidelines. And that's what really a TAPIA violation stands for. It's not just that a district court, you know, mentioned drugs. That's common in probably 70% of sentencing. It's really whether it says, this is inadequate. You know, four months or ten months. That's not adequate. I've got to go double. Because that's what's going to allow you to get what you finally need to turn your life around. Unless there's any questions, I'll waive the rest of my rebuttal. Thank you, counsel. Thank you. Thanks to both counsel. The case will be taken under advisement. The court will be in recess. Thank you.